IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-00530-D

| | |
|---|---|
| JAMES KEITH PRIDGEN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-20, -22] pursuant to Fed. R. Civ. P. 12(c). Claimant James Keith Pridgen ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on February 28, 2011, alleging disability beginning January 1, 2006. (R. 93, 193-210, 220). The claim was denied initially and upon reconsideration. (R. 53-89, 93). A hearing before the Administrative Law Judge ("ALJ") was held on January 22, 2013, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 19-45, 93). On April 5, 2013, the ALJ issued a decision denying

Claimant's request for SSI benefits. (R. 93-109). On May 17, 2013, the Appeals Council denied Claimant's request for review. (R. 12-15). On May 31, 2013, the Appeals Council set aside its May 17, 2013 action to consider additional information, and after reviewing and incorporating the additional evidence into the record, the Appeals Council again denied Claimant's request for review. (R. 5-11). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence

2

and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant contends the ALJ erred in assessing Claimant's credibility and residual functional capacity ("RFC"). Pl.'s Mem. [DE-20-1] at 6-10.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the application date. (R. 95). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease of the lumbar spine, pain syndrome, anxiety, depression, and a history of respiratory infections. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 95-96). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in his activities of daily living and moderate difficulties in social functioning and concentration, persistence and pace, with no episodes of decompensation of extended duration. (R. 96).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] lifting up to 20 pounds occasionally and up to ten pounds frequently, sitting for up to six hours in an eight-hour workday, and standing or walking for up to six hours in an eight-hour workday, with the following limitations: no more than occasional stooping; frequent but not constant bilateral overhead reaching and bilateral in-front reaching; avoid concentrated

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

exposure to pulmonary irritants and hazards; and perform simple, routine, repetitive tasks with only occasional interaction with others. (R. 97-102). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 98). At step four, the ALJ concluded Claimant had no past relevant work. (R. 102-03). At step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 103-04).

### B. Claimant's Testimony at the Administrative Hearing

At the time of the administrative hearing, Claimant was 51 years old, unemployed, and living with his fiancé. (R. 23, 29). He receives Medicaid and food stamp assistance, his fiancé has income from her work, and in the past he received assistance from his church, family and neighbors. (R. 32, 34-35, 37-38). Claimant completed the ninth grade, and he can read simple print and do simple math. (R. 23). Claimant last worked in 2006 in general maintenance. *Id.* His duties included lifting motors, I-beams, and pipes weighing over 50 pounds, and he quit when he could no longer do the heaving lifting. (R. 23-24).

Claimant explained numerous medical conditions supporting his disability claim and his inability to work full-time. In 2006, Claimant fell, breaking six ribs, tearing cartilage in his chest, and suffering a partial collapse of the right lung and total collapse of the left lung. (R. 24). He still experiences pain on his left side and difficulty breathing because two ribs did not heal properly. (R. 25, 31). Claimant has a history of low-back pain that radiates to his right leg and foot. (R. 25). Within the prior twelve months he started experiencing numbness and burning in his left leg as well. *Id.* Claimant's right leg gives out and he loses his balance, which has caused him to fall on several

5

occasions, and Claimant walks with the aid of a cane when he leaves his home. (R. 26). Claimant can lift ten pounds at most and can stand for roughly 30 minutes before experiencing throbbing and shooting pain in his legs and feet. (R. 27). Just walking and bending over is dangerous for his health, and if he lifted 20 pounds he would be unable to get out of bed the next day. *Id.* Claimant's pain is excruciating, and without pain medication it would be impossible for him to even stand. (R. 25-26). However, the pain medication sometimes makes him sleepy and disoriented, and he has difficulty concentrating. (R. 26-27). When taking his pain medication, he lies down three to four times a day for at least one to two hours to relieve his pain. (R. 28). Sometimes elevating his legs help alleviate the pain, and he changes positions frequently. *Id.* Claimant can sit for 15 to 20 minutes before his back stiffens and it takes a few minutes for him to readjust. *Id.* He can walk no more than 75 feet before having to stop due to pain. (R. 33). Claimant also uses a heating blanket and a TENS unit for his back pain, which help sometimes but never fully alleviates his pain. *Id.*

Claimant requires assistance from his fiancé to dress, put on shoes, get in and out of the bath, and to bathe, because he cannot bend over. (R. 29, 31). She also does all the housework and cooking, takes Claimant to his doctor's appointments, and pays the bills. *Id.* Claimant tries to help sweep and take out the trash on occasion, but can sustain these activities for no more than 30 minutes before having to take a break due to pain. *Id.* He does very little driving, mostly to the grocery store once a week, and after approximately 30 minutes he must return to the car due to pain. (R. 31-32). Claimant does not participate in social activities and estimates he had been out to eat twice in the last two years. (R. 32). Most of his activities are limited to his home. (R. 33).

Claimant also experiences depression and anxiety for which he takes medication. (R. 29-30). He does not want to be around others, is temperamental, and has panic attacks where he experiences

6

shortness of breath and a suffocating sensation. (R. 30).

## C.     Vocational Expert's Testimony at the Administrative Hearing

Melissa Stewart testified as a VE at the administrative hearing. (R. 39-42). After the VE classified Claimant's past work, the ALJ posed three hypotheticals to the VE. He first asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant, limited to medium work that would require occasional stooping, frequent but not constant bilateral overhead reaching and bilateral in-front reaching, avoiding concentrated exposure to common pulmonary irritants and hazards, and simple, repetitive tasks with only occasional interaction with others. (R. 40). The VE opined that such a hypothetical individual could perform the jobs of laundry laborer, medium exertion, skill level 2, and Dictionary of Occupational Titles ("DOT") code 361.687-018; lithographic general worker, medium exertion, skill level 2, and DOT code 979.687-034; and industrial sweeper-cleaner, medium exertion, skill level 2, and DOT code 389.683-010. (R. 41). The ALJ next changed the hypothetical to assume light work, and the VE listed the jobs of housekeeper, light exertion, skill level 2, and DOT code 323.687-014; folder, light exertion, skill level 2, and DOT code 369.687-018; and production assembler, light exertion, skill level 2, and DOT code 706.687-017. *Id.* Finally, the ALJ asked the VE to assume an individual with all the impairments testified to by Claimant, including the inability to lift anything safely or to walk more than 75 feet, and the VE opined no jobs would be available. (R. 42).

## V.  DISCUSSION

## A.     The ALJ's Credibility and RFC Determinations

Claimant contends that the ALJ erred in the credibility and RFC determinations. Specifically, Claimant argues that the medical evidence does not support a finding that he is capable

7

of light work, that his subjective complaints of pain are consistent with the medical record, and the ALJ erred in not fully crediting Claimant's testimony regarding the extent to which he is limited by chronic and severe pain. Pl.'s Mem. at 6-10. The Commissioner contends that the ALJ properly evaluated Claimant's credibility and RFC and the decision is supported by substantial evidence. Def.'s Mem. [DE-23] at 9-13.

An individual's RFC is defined as the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). Sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

When evaluating a claimant's statements in determining the RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.

1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulation 20 C.F.R. § 416.929(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *See Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *3.

Here, in explaining the RFC determination the ALJ discussed Claimant's testimony regarding his impairments and limitations, as well as the medical treatment and opinion evidence. The ALJ

9

first summarized Claimant's hearing testimony, including his 2006 chest injury and the resulting pain and breathing difficulties, including the pain in his back and the pain and numbness in his legs and feet. (R. 98). The ALJ also recounted the functional limitations reported by Claimant, such as his inability to lift more than ten pounds or stand for 30 minutes, his need to lie down several times a day, and the substantial assistance he receives from his fiancé with housework and personal care. *Id.* However, the ALJ determined Claimant's statements regarding the intensity, persistence, and limitations of Claimant's symptoms were not entirely credible, because they were not fully supported by other evidence in the record. *Id.* The ALJ next discussed Claimant's treatment history, including objective medical tests, and in doing so noted instances where the medical evidence did not support the level of severity alleged by Claimant with respect to his limitations. (R. 98-101). The ALJ finally discussed other evidence of record, including a state agency medical consultant's opinion that Claimant could perform medium work with some postural and environmental limitations. (R. 98-102). The ALJ concluded that Claimant was capable of light work with postural, environmental, and nonexertional limitations. (R. 102).

### 1. Credibility

Claimant asserts that the following evidence supports his testimony regarding the severity of his impairments: Claimant testified to excruciating pain in his low back radiating to his lower extremities, leg numbness, and loss of balance (R. 25-26), he utilizes a cane for balance and ambulation (R. 26), he does not feel safe lifting more than ten pounds and can only stand for 30 minutes before experiencing leg pain (R. 27), a nerve study showed chronic radiculopathy in the lower extremities (R. 739), an MRI showed degenerative changes at multiple levels (R. 727-28), and he has been involved with pain management services and used a TENS unit to alleviate his pain, but

10

continues to suffer from severe pain that substantially limits his daily activities (R. 25-28, 33, 36-37). Pl.'s Mem. at 9-10. The ALJ did not ignore this evidence, but expressly considered both Claimant's testimony on these specific points and Claimant's nerve testing and MRI results. (R. 98, 100).

With respect to the nerve study and MRI results, the ALJ explained why they did not support the level of severity alleged by Claimant:

> An MRI of the claimant's lumbar spine from November 6, 2012 showed degenerative changes, primarily at L4-5 and L5-S1 with slight narrowing of the neural formina bilaterally at L4-5 and moderate to advance narrowing at L5-S1. Results showed no evidence of trauma or evidence of disc herniation. (Exhibit 28F). Electromyography test results showed L5 radiculopathy and right S1 radiculopathy. (Exhibit 29F p. 4). Neurosurgeon Raymond Baule, M.D., noted that the claimant had a positive straight leg raise test bilaterally but that the claimant had a normal gait. Dr. Baule stated that he would be willing to refer the claimant to a pain specialist, but the claimant declined the referral. (Exhibit 29F p. 4). On January 30, 2012, neurosurgeon Samuel St. Clair examined the claimant and stated that he did not recommend any neurosurgical intervention. (Exhibit 30F).

(R. 100). The ALJ further found Claimant's conservative treatment with pain medication and muscle relaxers did not support the alleged severity of his symptoms, and two neurosurgical consultants declines to recommend surgery. (R. 98-101, 301-30, 460-62, 487-91, 731-32, 745). The ALJ cited evidence indicative of seemingly exaggerated symptoms. (R. 99 ("Dr. Frazier noted that the claimant was 'very overactive, very demonstrative of his pain with grunting and groaning, with guarding himself and holding his side and flinching and jumping every time I would lightly touch his skin.'") (quoting R. 583)); *see also* (R. 579 (Dr. Frazier noted Claimant was "constantly groaning and holding the right leg, but he had mentioned earlier that his left leg was hurting, but the patient said no, it is in his right leg" and "patient was so hyperactive and it was difficult to tell if he had a positive straight leg raise test or not.")). The ALJ also explained that the record did not establish that a hand-held assistive device is medically required pursuant to S.S.R. 96-9p. *Id.* Claimant does not

11

contest the ALJ's determination in this regard and points to no evidence in the record indicating Claimant was prescribed a cane. *See Timmons v. Colvin*, No. 3:12-CV-609, 2013 WL 4775131, at *7-9 (W.D.N.C. Sept. 5, 2013) (unpublished) (finding the ALJ did not err in determining claimant could perform light work despite her alleged need to use a cane where claimant failed to cite any law requiring an ALJ to consider the impact of a device that a claimant is not medically required to use).

Finally, the ALJ's credibility determination is supported by the RFC assessment of Dr. Cox, the non-examining state agency medical consultant. Dr. Cox concluded Claimant could perform medium exertion work with postural limitations. (R. 81-84). The ALJ gave this opinion partial weight due to evidence received at the hearing level indicating chest wall tenderness and reduced range of motion in the lumbar spine. (R. 101). The ALJ concluded that while Claimant had some reduced range of motion in his lumbar spine, he had full strength in his extremities and could perform light work with postural limitations. (R. 102). Claimant does not challenge the evaluation of Dr. Cox's opinion and has cited no medical opinion imposing a level of restriction consistent with his testimony. *See Filip v. Colvin*, No. 7:13-CV-251-D, 2014 WL 7205106, at *7 (E.D.N.C. Dec. 17, 2014) (unpublished) (adopting memorandum and recommendation concluding that ALJ did not err in assessing claimant's credibility with respect to cervical radiculopathy impairments where the ALJ considered history of treatment for cervical disc disease and opinion of non-examining state agency consultant supported the ALJ's credibility assessment). Thus, the opinion of Dr. Cox as to Claimant's RFC supports the ALJ's credibility determination.

To the extent Claimant argues the ALJ should have given greater weight to his testimony, it is not within the province of the court to reweigh the evidence, even if the court might reach a different result, where the ALJ has considered and analyzed all the relevant evidence and his

12

decision is supported by substantial evidence, as is the case here. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Accordingly, the ALJ did not err in assessing Claimant's credibility where he applied the proper legal standards and his assessment is supported by substantial evidence.

### 2. Residual Functional Capacity

In arguing that the ALJ erred in the RFC determination, Claimant relies on much of the same evidence, specifically Claimant's history of low back pain and leg pain, the nerve study showing chronic radiculopathy and MRI showing degenerative changes, his testimony that he lies down for several hours a day to relieve his pain, and his use of a cane. Pl.'s Mem. at 7-8. However, as detailed above, the ALJ considered this evidence in formulating the RFC. (R. 98, 100). The ALJ thoroughly discussed Claimant's testimony regarding his limitations, his treatment history, including the objective medical tests, and the opinion evidence. (R. 98-102). Thus, the ALJ weighed all the relevant evidence, as he was required to do in assessing Claimant's RFC. 20 C.F.R. § 416.945(a)(3); S.S.R. 96-8p, 1996 WL 374184, at *5.

As discussed above, the ALJ noted that Claimant received relatively conservative treatment in light of the alleged severity of his pain and no surgical intervention was recommended (R. 98-101, 301-30, 460-62, 487-91, 731-32, 745), that examination findings were inconsistent regarding Claimant's ability to ambulate, his range of motion, and strength, and his cane was not prescribed or medically necessary (R. 99-100, 538-46, 557-59, 659-64, 732), and that Claimant exhibited seemingly exaggerated symptoms on occasion (R. 99, 579, 583). The ALJ also relied in part on Dr. Cox's RFC assessment, but imposed a more restrictive RFC. *See Solvey v. Colvin*, No. 7:12-CV-347-BO, 2014 WL 555665, at *2 (E.D.N.C. Feb. 11, 2014) (unpublished) (finding no error in the RFC determination where, among other things, the ALJ's RFC finding was more restrictive

13

than the only medical opinion in the record relating to the relevant time period). The court declines to reweigh the evidence where the ALJ in formulating the RFC appropriately considered all the relevant evidence and substantial evidence cited by the ALJ supports the RFC determination. *See Saunders v. Colvin*, No. 5:12-CV-775-D, 2014 WL 1057024, at *10 (E.D.N.C. Mar. 17, 2014) (unpublished) (adopting memorandum and recommendation rejecting claimant's argument that the ALJ's RFC determination was erroneous because he failed to include walking and postural/positional changes, rest breaks, and social limitations, where the ALJ properly addressed Claimant's limitations and the RFC was supported by substantial evidence). Accordingly, the ALJ did not err in the RFC determination.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-20] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 29 day of January 2015.

Robert B. Jones, Jr.
United States Magistrate Judge

14